# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

ANITA RHODES,                                   )
                                                )
      Plaintiff,                            )
                                                )
VS.                                             )        No. 04-1102-T/An
                                                )
ALLSTATE INSURANCE COMPANY                      )
and ACE AMERICAN INSURANCE                      )
COMPANY,                                        )
                                                )
      Defendants.                           )

---

## ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Anita Rhodes filed this action in the Circuit Court of Madison County, Tennessee, on April 2, 2004 against Allstate Insurance Company ("Allstate") and Ace American Insurance Company ("Ace"). Plaintiff alleges that the defendants have refused to pay policy benefits to which she is entitled, and have violated the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.* The defendants removed the action to this Court pursuant to 28 U.S.C. § 1441 *et seq.* on the basis of diversity of citizenship, 28 U.S.C. § 1332.

On December 27, 2004, Ace filed a motion for partial summary judgment on plaintiff's TCPA claim. On January 5, 2005, before the time to respond to the motion for partial summary judgment had expired, plaintiff's counsel moved to withdraw from further representation. Magistrate Judge S. Thomas Anderson conducted a hearing on the motion

This document entered on the docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 5|3|05

to withdraw on February 7, 2005, at which both plaintiff and her counsel were present. Judge Anderson subsequently entered an order granting counsel's motion to withdraw, allowing plaintiff until February 28, 2005 to obtain and notify the Court of new counsel, and extending plaintiff's deadline for responding to Ace's motion for partial summary judgment until March 10, 2005.

Plaintiff was granted a further extension of time on February 28, 2005, giving her until March 21, 2005 to obtain new counsel and allowing until April 5, 2005 to respond to Ace's motion for partial summary judgment. On March 4, 2005, Allstate filed its own motion for summary judgment, and on March 8, 2005, Ace filed a second motion for summary judgment on plaintiff's breach of contract claim.

On March 21, 2005, acting *pro se*, plaintiff filed a motion for voluntary dismissal of this action without prejudice. The Court denied the motion on March 23, 2005 due to plaintiff's failure to include either a certificate of service showing that copies of the motion had been served on counsel for the defendants or a certificate of consultation indicating whether the defendants opposed the motion. However, the Court advised plaintiff that she could refile the motion with the necessary certificates.

Plaintiff has not refiled her motion for voluntary dismissal. She has neither notified the Court that she has obtained new counsel nor stated definitely that she intends to represent herself. In addition, plaintiff has failed to file any responses to the pending motions for summary judgment, even though the time to do so has expired, and has sought no further

extension of time in which to do so. Therefore, the motions for summary judgment are ripe for disposition.

Motions for summary judgment are governed by Fed. R. Civ. P. 56. If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Fed. R. Civ. P. 56(c). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at 323.

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). However, the court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter but only to determine whether there is a genuine issue for trial. Id. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street v. J.C. Bradford & Co.,

3

886 F.2d 1472, 1479 (6th Cir. 1989) (quoting <u>Liberty Lobby</u>, 477 U.S. at 251-52). Doubts as to the existence of a genuine issue for trial are resolved against the moving party. <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970).

If a party does not respond to a motion for summary judgment, the Federal Rules of Civil Procedure provide that "summary judgment, if appropriate, shall be entered against him." Fed. R. Civ. P. 56(e). The fact that plaintiff did not respond does not require granting defendant's motion. However, if the allegations of the complaint are contravened by defendant's evidence and defendant is entitled to judgment as a matter of law on those facts, then summary judgment is appropriate. <u>Smith v. Hudson</u>, 600 F.2d 60, 65 (6th Cir. 1979).

On the evening of May 4, 2003, a tornado struck in the city of Jackson, Tennessee. At the time, plaintiff's residence, located at 1206 Mifflin Road in Jackson, was covered by a homeowner's insurance policy, #063750484, issued by Allstate. In addition, the residence was covered by a Disaster Mortgage Protection Policy, #866569-1, issued by Ace. Plaintiff alleges that her home was severely damaged by the tornado, and that she submitted claims under both policies. However, the defendants have failed to pay all of the benefits to which plaintiff contends she is entitled.

On July 30, 2003, having received a complaint about raw sewage surfacing on plaintiff's property, the Jackson-Madison County Regional Health Department issued a sanitation notice requiring plaintiff to correct the problem on or before September 4, 2003. Plaintiff advised the Health Department that she believed the tornado had damaged the

4

septic tank system and that she intended to install a new system. A Health Department employee, Jim Howell, visited the property at some point thereafter to evaluate the feasibility of installing a new system. Howell found that there were questions regarding whether the area was suitable for the installation of a new septic tank system due to the soil type, a tendency of the property to occasionally flood, and the presence of several capped artesian wells somewhere on the property. The Health Department notified plaintiff of Howell's findings on January 9, 2004, advising that it could not determine whether to approve the installation of a new system without an evaluation by a soil scientist and the location of the artesian wells. (Bell Aff. & Ex. A.)

Following plaintiff's submission of the claim under her homeowner's insurance policy, Allstate's adjusters inspected the residence on three separate occasions. In addition, Allstate hired Martin Ellison, a professional engineer, to examine the residence and determine the cause of the damages claimed by plaintiff. Ellison's inspection took place on December 16, 2003. Allstate ultimately determined that the home had suffered some hail damage and other damage attributable to the tornado, and paid plaintiff a total of $7,226.25.

Plaintiff claimed that various additional damages were caused by the tornado, including that the home had shifted on its foundation, the bathroom ceiling was cracked, decking boards under the roof were cracked causing the roof to leak, the hot water heater, dishwasher and deep freezer were broken, and the water source heat pump was broken. Allstate denied these aspects of plaintiff's claim based on Ellison's determination that the

damages were not caused by hail or otherwise attributable to the tornado. Instead, Ellison determined that the additional damages resulted from age and settling of the structure, poor maintenance and faulty installation of appliances. (Ellison Aff. ¶¶ 4, 6-8.) It was also Ellison's opinion that the home had not shifted on its foundation. Rather, he found that "the apparent shift was actually a bulge resulting from installation of vinyl siding directly over clapboard siding and wood corner trim." Id. ¶ 5.

As indicated, plaintiff also claimed that the tornado damaged her septic tank system. Specifically, she claimed the septic tank system cover imploded and the field lines collapsed. Allstate denied this portion of her claim as well; however, Ellison apparently made no findings as to the cause of any damage to the septic tank system.

Following the submission of plaintiff's claim under the Disaster Mortgage Protection Policy, Ace requested that an independent adjuster evaluate the premises. Independent adjuster Robert Williamson inspected the property and issued a report dated January 21, 2004. Williamson found that the plaintiff's residence was uninhabitable due to "[s]ubstandard initial construction, age and deterioration of the foundation and floor support system and a non functioning septic tank system," not because of the tornado or any other covered damage. (Likens Aff., Ex. B.) Williamson also found no evidence that the house had twisted, or shifted, due to the storm. He could not determine the cause of any damage to the septic tank system cover because plaintiff was unable to show him where it was located. Id. Based on Williamson's report, Ace notified plaintiff on January 29, 2004 that

6

it was denying her claim for additional benefits.[1]

On January 9, 2004, Walter Anderson, a professional engineer, inspected plaintiff's residence at her request. In his deposition, Anderson testified that only twenty percent of the damage to the home could be attributed to hail and the tornado, and that even this was a "generous" estimate. (Anderson Dep. at 25 & Ex. 3.) Specifically, he testified that the damage caused by the tornado was limited to some broken ceiling joists and rafters, some broken windows in the kitchen, and one area where the house had shifted slightly off the foundation.[2] Id. at 10-11, 22. Anderson further testified that the house had been neglected and was generally in bad repair, and that the construction appeared to be substandard. Id. at 17, 20.

While he expressed the opinion that the house was uninhabitable and should be condemned, Anderson did not state that it was actually unsafe or otherwise unfit for habitation. Rather, his opinion was based on a determination that the cost of the needed repairs would have been more than the house was worth. Id. at 17-20. While the house was unoccupied at the time of Anderson's inspection in January 2004, plaintiff had continued to reside there for approximately six months following the tornado. (Pl.'s Dep. at 8.) The home has never been condemned by any authority.

---

[1] In August 2003, Ace paid plaintiff $250 in accordance with policy language providing for reimbursement of any deductible amounts incurred due to a loss under her primary homeowner's policy.

[2] As indicated *supra*, both Martin Ellison, Allstate's engineer, and Robert Williamson, Ace's independent adjuster, found no evidence that the home had shifted during the storm. Anderson specifically disagreed with Ellison's explanation of the "shift." (Anderson Dep. at 28-29.)

<u>Breach of Contract Claims</u>

An insurance contract is subject to the same general rules of construction and interpretation as any other contract. <u>See</u> <u>American Justice Ins. Reciprocal v. Hutchison</u>, 15 S.W.3d 811, 814 (Tenn. 2000); <u>McKimm v. Bell</u>, 790 S.W.2d 526, 527 (Tenn. 1990). "The language of the policy must be taken and understood in its plain, ordinary and popular sense," <u>Hutchison</u>, 15 S.W.3d at 815, and "must be construed in a reasonable, logical manner, so as to effectuate the intention of the parties." <u>Setters v. Permanent Gen. Assur. Corp.</u>, 937 S.W.2d 950, 953 (Tenn. Ct. App. 1996).

The homeowner's policy issued to plaintiff by Allstate contains the following exclusions from coverage:

> In addition, we do not cover loss consisting of or caused by any of the following:
>
> 15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
>   b) mechanical breakdown;
>     . . . .
>   g) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
>     . . . .
>     . . . .
> 22.   Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
>   a) planning, zoning, development, surveying, siting;
>   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>   c) materials used in repair, construction, renovation or remodeling; or
>   d) maintenance.

(Allstate's Mem., Ex. 6, pp. 11-12.)

8

The Disaster Mortgage Protection Policy issued to plaintiff by Ace contains the following definitions:

**Event** means any sudden and accidental occurrence beyond the control of or not intended by you, by your immediate family or by other person(s) living in your home that physically, adversely and directly affects the habitable condition of your premises.

**Permanently Uninhabitable** - your premises, by reason of an event, is made unfit for use as a residence and can not be made fit for use as a residence by corrective action due to:
1.   Condemnation of the land on which your property exists which permanently prohibits rebuilding or reconstruction. The land must be condemned by federal, state or local statutory or common law, ordinance, rule or regulation or judicial or administrative order or decision.
2.   Movement of the land on which your property exists which makes the land permanently unfit for rebuilding or reconstruction as determined by federal, state or local statutory or common law, ordinance, rule or regulation or judicial or administrative order or decision.

**Temporarily Uninhabitable** - your premises, by reason of an event, is made unfit for use as a residence for a period in excess of forty-eight (48) consecutive hours, but can be made fit for use as a residence by corrective action.

(Likens Aff., Ex. A, § G.)

The Ace policy provided for three specific types of coverage. Coverage A provided for payment of plaintiff's monthly mortgage payments if her property became temporarily uninhabitable due to "direct physical loss or damage to covered property caused by an event." Id. § C.2-3. The exclusions under Coverage A included:

. . . .
5. Normal wear and tear and/or deterioration;
6. Settling, shrinking, bulging or expansion, including resulting cracking of

9

pavements, patios, foundations, walls, floors, roofs or ceilings.
. . . .
8. Neglect which means your failure to take all reasonable steps to protect your property when it is threatened with loss or damage, and to take all reasonable steps to protect your property from further loss after loss or damage occurs.
. . . .
11. Loss caused by a condition known by you to exist prior to this insurance being placed in force or of which you should have known to exist by use of reasonable diligence.

Id., § C.3.

Coverage B of the Disaster Mortgage Protection Policy provided for payment of the total unpaid balance of plaintiff's mortgage if loss due to an event rendered the covered property permanently uninhabitable. Id., § C.2-3. The Coverage B exclusions included:

1. Loss caused by a condition known by you to exist prior to this insurance being placed in force or of which you should have known to exist by use of reasonable diligence.
. . . .
4. Faulty inadequate or defective:
  planning, zoning, development, surveying, siting;
  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
  materials used in repair, construction, renovation or remodeling; or, maintenance;
  of any part or all of any property on the insured premises.

Id., § C.3.

Coverage C provided for payment of any deductible amount incurred by plaintiff as the result of a loss paid under her primary homeowner's policy. Id., § C.2. As indicated, see note 1, *supra*, in August 2003 Ace paid plaintiff $250 in reimbursement for the deductible amount she incurred under her Allstate homeowner's policy.

As plaintiff has failed to respond to the motions for summary judgment, she has offered nothing to contradict the evidence submitted by the defendants. Thus, the undisputed evidence in the record shows that the additional damages claimed by plaintiff under her Allstate homeowner's policy, were not the result of hail and were not otherwise caused by the tornado. Rather, those damages were the result of normal wear and tear and deterioration, settling, lack of maintenance and repair, and/or poor construction, all of which are unambiguously excluded under the policy. Plaintiff has also offered no evidence establishing that the claimed damage to her septic tank system was caused by the tornado.

As the evidence shows that most of the damages claimed by plaintiff were not caused by the storm, it follows that the premises were rendered neither permanently nor temporarily uninhabitable by reason of a covered "event," as that term is defined in the Disaster Mortgage Protection Policy issued by Ace. The property has not been condemned or determined permanently unfit for rebuilding by any "federal, state or local statutory or common law, ordinance, rule or regulation or judicial or administrative order or decision." While the Health Department did decline to approve the installation of a new septic tank system absent further study and evaluation, it did not determine that the property was permanently unfit for rebuilding. Furthermore, as with the Allstate policy, the Ace policy excludes losses caused by such things as deterioration, settling, inadequate maintenance and repair, and poor construction.

11

The Court concludes that the material facts are undisputed on the issue of whether the defendants breached their contracts of insurance. Allstate and Ace are, therefore, entitled to judgment as a matter of law on plaintiff's breach of contract claims.

<u>Tennessee Consumer Protection Act Claims</u>

The TCPA provides a cause of action to "[a]ny person who suffers an ascertainable loss . . . as a result of the use or employment by another person of an unfair or deceptive act or practice . . . ." Tenn. Code Ann. § 47-18-109(a)(1). The Tennessee Supreme Court has held that the TCPA may be applied to an insurance company's bad faith refusal to pay a valid claim. <u>Myint v. Allstate Ins. Co.</u>, 970 S.W.2d 920, 926 (Tenn. 1998); <u>see also</u> <u>Sparks v. Allstate Ins. Co.</u>, 98 F. Supp. 2d 933, 938 (W.D. Tenn. 2000).

In her complaint, plaintiff makes a bare-bones allegation that "[d]efendants are in violation of the Tennessee Consumer Protection Act." (Compl. ¶ 10.) However, she alleges no specific facts to support this claim. In defendants' First Set of Interrogatories, plaintiff was asked to identify the facts which support her allegation of a violation of the TCPA. Although plaintiff responded that she would "supplement the allegations," (Allstate's Mem., Ex. 2, Interr. #19), she has failed to do so.

Plaintiff has offered no evidence that either Allstate or Ace acted in bad faith in refusing to pay additional benefits, or that the insurers acted unfairly or deceptively in handling her claims. Therefore, the defendants are also entitled to judgment as a matter of law on plaintiff's claims under the TCPA.

<u>Conclusion</u>

For all the foregoing reasons, the Motion for Partial Summary Judgment filed by Ace on December 27, 2004 and the Motion for Summary Judgment filed on March 8, 2005 are GRANTED. The Motion for Summary Judgment filed by Allstate on March 4, 2005 is also GRANTED. The Clerk of Court is directed to prepare a judgment accordingly.

IT IS SO ORDERED.


_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_____
DATE

13

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 35 in case 1:04-CV-01102 was distributed by fax, mail, or direct printing on May 3, 2005 to the parties listed.

---

Anita Rhodes
327 Highway 188
Alamo, TN 38001

Jonathan David Stewart
RAINEY KIZER BUTLER REVIERE & BELL
105 S. Highland Avenue
Jackson, TN 38302--114

Russell E. Reviere
RAINEY KIZER REVIERE & BELL
209 E. Main Street
Jackson, TN 38302--114

Thomas F. Barnett
BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ
165 Madison Ave.
Ste. 2000
Memphis, TN 38103

Honorable James Todd
US DISTRICT COURT